[Civ. No. 3546. Third Appellate District.—June 21, 1928.]

BUSCH PIPE & SUPPLY COMPANY (a Corporation), Respondent, v. W. H. KEMBLE, et al., Defendants; ARROWHEAD LAKE COMPANY (a Corporation) et al., Appellants.

Musick, Burr & Pinney for Appellants.

Young & Young, Milton K. Young, Lyndol L. Young and William K. Young for Respondent.

FINCH, P. J.—Plaintiff brought the above-entitled actions to foreclose liens claimed by it for materials alleged to have been sold to the defendant Comstock & Howard and used by that corporation, as contractor, in the construction of buildings at Arrowhead Lake for the defendants Kemble and Arrowhead Lake Company, respectively. The two cases were tried together on the same evidence and separate judgments were entered in favor of the plaintiff as prayed for. Separate appeals have been taken from the

judgments, the defendants, Arrowhead Lake Company and Title Insurance and Trust Company being the appellants in both cases. The record on appeal is contained in a single transcript and both appeals have been argued together.

Comstock & Howard was a corporation. All of its capital stock except one share was owned by C. G. Comstock, F. W. Howard, and MacNeal Swasey. Prior to the sale of the materials for which the plaintiff claims a lien, Comstock & Howard had entered into contracts with Kemble and Arrowhead Lake Company, respectively, for the construction of the buildings in question, which involved large expenditures of money. "They handled the jobs on a percentage contract." Howard testified that in order to make a profit on materials furnished for the buildings and to have a "supply that would be available in quantity," the stockholders of Comstock & Howard organized the defendant Lakewood Lumber Company, a corporation. The stockholders in the two corporations were the same, except that one share of stock in the latter corporation was held by a person who was not a stockholder in the former, the purpose evidently being to qualify such person to act as a director. The connection between the two corporations was so close that Howard testified that he could not say for which corporation he was acting in ordering plumbing materials from the plaintiff, "because, as we all know, the interests of these two corporations were combined so closely I never considered who I was acting for." The two corporations kept separate books of account, however, and the Lakewood Lumber Company sold some materials to other contractors than Comstock & Howard. A director of the Lakewood Lumber Company testified that "99% of the business done by the Lakewood Lumber Company was with Comstock & Howard." The former company made a profit of from twenty-five per cent to forty per cent on the materials furnished to the latter.

The court found that the two corporations were "identical and possessed practically the same officers, the same stockholders, and had the same corporate purposes and that all the acts of the defendant Lakewood Lumber Company in connection with the purchase of the materials mentioned in plaintiff's complaint from plaintiff were done and performed by it as a dummy for the defendant Com-

stock & Howard," and that such materials were purchased from plaintiff by Comstock & Howard. The only ground urged by appellants for a reversal of the judgments is that these findings are not supported by the evidence. If such materials were in fact sold by the plaintiff to Comstock & Howard, the contractors, for use in the buildings in question, then plaintiff's liens are valid, whether the two corporations mentioned are separate or identical entities, it being admitted that the materials were used in such buildings.

Van Buren Jarvis, secretary and sales manager of the plaintiff, testified positively that the materials were sold directly to Comstock & Howard for use in the buildings mentioned; that the plaintiff "was requested (by Comstock & Howard) to invoice this material to the Lakewood Lumber Company. . . . They told me . . . the Lakewood Lumber Company was to be a receiving depot for Comstock & Howard's use to store material that they were to use at Lake Arrowhead. . . . They (the materials) were all ordered by Comstock & Howard, . . . all the orders being verbal and being made in person or over the telephone. . . . The name of Lakewood Lumber Company . . . was never mentioned to me in connection with any purchasing or ordering of goods except at the second conversation when I was requested to have all invoices made out in the name of and sent to the Lakewood Lumber Company. . . . The invoices were mailed in care of the office of Comstock & Howard. . . . All merchandise . . . was first ordered verbally by either Mr. Robinson (who was general plumbing superintendent of Comstock & Howard and was not an employee of Lakewood Lumber Company) or Mr. Howard, and then several days later a writing purporting to confirm the verbal order was received from the Lakewood Lumber Company. In every instance that a confirming order was received, the merchandise described therein had been theretofore verbally ordered. My dealings on behalf of the plaintiff were entirely with Comstock & Howard. . . . The plaintiff is a wholesale plumbing and supply house and does not sell direct to the retail trade. We have no cut and dried policy, however, and sell sometimes direct to large corporations, but generally speaking, do not sell to customers. . . . In a great many instances the merchandise was shipped long before this so-called confirmation was

received at our office. . . . There was never any ledger sheet kept by the plaintiff corporation (with?) Comstock & Howard. . . . We have sold merchandise to Comstock & Howard where Comstock & Howard paid us for it with their own check. . . . That would not be carried on a ledger sheet. . . . No ledger sheet is ever made for any material for which we receive cash or checks." A ledger sheet of the plaintiff, designating Lakewood Lumber Company as debtor, marked "special account," was introduced in evidence by the defendants. It specifies the buildings which Comstock & Howard were constructing as those in which the materials were to be used. Jarvis testified that the notation, "special account," was to call "attention to the fact that the actual merchandise was not sold to the Lakewood Lumber Company."

Howard testified that the Lakewood Lumber Company has "a contract with Comstock & Howard . . . to furnish all lumber and other building materials which were needed by Comstock & Howard for its various contracts at Lake Arrowhead"; that the materials involved herein "were being bought for the use of Comstock & Howard"; that they were not bought "for general stock purposes for the Lakewood Lumber Company. . . . The fixtures that went into these two jobs were bought for those particular jobs."

A witness for the defendant testified that the materials in question were not sold to Comstock & Howard, but to Lakewood Lumber Company. The invoices for such materials were made out to Lakewood Lumber Company, but they specify the particular buildings for which the materials were furnished.

Subsequent to the purchase of the materials, both Comstock & Howard and Lakewood Lumber Company were adjudged bankrupts. Thereafter the plaintiff filed a claim in the bankruptcy proceedings against Lakewood Lumber Company for the same materials involved herein. In the claim it is stated that such materials "were sold to the Lakewood Lumber Company . . . and to Comstock & Howard"; that liens had been filed against the property on which the materials were used; that the claims of lien were about to be litigated and that any recovery thereon would be credited on the claim filed in the proceeding in bankruptcy. It does not appear whether or not a similar claim was filed in the

bankruptcy proceeding against Comstock & Howard. While this testimony tends to weaken the case made by the plaintiff, it goes only to the weight of the evidence and does not necessarily require a finding in favor of the defendants. There is other testimony tending to support or to discredit the claims of the respective parties, but enough has been stated to show that the evidence is in substantial and irreconcilable conflict as to whether the materials involved were sold to Comstock & Howard or to Lakewood Lumber Company. The finding of the trial court on that issue, therefore, is conclusive on appeal, and it is unnecessary to determine whether the finding that the two corporations were identical has sufficient support in the evidence.

The judgments in both cases are affirmed.

Plummer, J., and Hart, J., concurred.